**Daniel R. MEYERS, Jr.,
Plaintiff-Appellant,**

v.

**The M/V EUGENIO C, its engines, tackle, apparel, Etc., In Rem, et al., Defendants-Appellees.**

No. 89–3868.

United States Court of Appeals, Fifth Circuit.

Dec. 28, 1990.

Lester J. Lautenschlaeger, Jr., New Orleans, La., for plaintiff-appellant.

Gustave A. Manthey, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Costa Armatori.

Before WISDOM, GEE, and BARKSDALE, Circuit Judges.

GEE, Circuit Judge:

Today we decide whether the district court properly granted a shipowner's motion for summary judgment against a bar pilot's negligence-based personal injury claim. Concluding that there is no genuine dispute about any material fact and that the facts require judgment for the defendant shipowner, we affirm the judgment of the district court.

### Background

In January 1985, the *M/V Eugenio C*, a 712 foot Italian passenger liner, arrived from sea. Louisiana Statutes require that a bar pilot navigate her into port. Captain Paul Malasovich, a bar pilot, was dispatched and boarded the *Eugenio C.* Shortly after he boarded, the ship ran aground. Initial efforts to refloat the ship were unsuccessful, but Captain Malasovich remained on board throughout the night. After Captain Malasovich had been on board for eight hours, Captain Meyers, another bar pilot with twenty-seven years experience, was dispatched to replace Captain Malasovich.

The next morning dawned cold and windy. The *Eugenio C* was grounded with her bow heading straight into 25–30 m.p.h. winds. Captain Meyers battled 3–5 foot seas as he piloted the crewboat *Delta* toward a midships port on the *Eugenio C*'s port side. The crew of the *Eugenio C* had rigged a rope ladder from the midships port, and as Captain Meyers attempted to climb the ladder from the *Delta* to the *Eugenio C* the rough seas caused him to strike and injure his knee.

Captain Meyers sued numerous defendants for his injuries. All of these settled except the *Eugenio C*'s owner. Captain Meyers alleged multiple theories of negligence against the shipowner, but only negligent failure to provide a safer access and negligent failure to warn of the danger in boarding during rough seas remained at

the time the district court granted summary judgment.[1]

### Standard of Review

 We review the district court's summary judgment ruling in light of the fact that summary judgment is appropriate only if there is no genuine dispute over any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Pennington v. Vistron Corp*, 876 F.2d 414 (5th Cir.1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121 (5th Cir.1988). The Supreme Court has defined material facts as those facts that will affect the outcome of the lawsuit under governing law. *See Anderson*, 477 U.S. 247–48, 106 S.Ct. at 2509–10. Furthermore, a genuine dispute requires more than showing some metaphysical doubt—there must be an issue for trial. *See Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56. Finally, respecting evidentiary burdens, we note that once the moving party demonstrates the lack of a genuine issue over a material fact, the burden shifts to the nonmoving party to designate specific facts that establish an issue for trial. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

### Safer Access

 First, Captain Meyers argues that he and the shipowner have a genuine dispute over facts material to his claim that the shipowner could have provided safer access to the *Eugenio C.* To escape an earlier grant of summary judgment, Captain Meyers suggested that the shipowner was negligent in choosing to use a midships port for access rather than a port further aft. *See Meyers*, 876 F.2d at 38.

Captain Meyers suggested that the bow-to-stern curvature of the ship would have shielded him from the wind and sea, thus providing him a lee for boarding. In response to this argument, the shipowner filed a new motion for summary judgment supported by an affidavit from Brend C. Haveman, a marine surveyor. The affidavit qualified Mr. Haveman as an expert in marine surveying and as an expert in boarding ocean going vessels from crewboats by means of rope ladders. In the affidavit, Mr. Haveman attested that all available ports on the *Eugenio C* were located within a region where there was no bow-to-stern curvature; thus, choosing an aft port would not have afforded a lee. Mr. Haveman also swore that in his expert opinion boarding the *Eugenio C* by rope ladder extended from an aft port would have been more dangerous because the ladder would have hung away from the side of the *Eugenio C* allowing the ladder to twist freely.[2] The shipowner also included blueprints of the *Eugenio C* showing the location of the ports and the ship's curvature. Our review of the blueprints reveals that they support Mr. Haveman's view.

Captain Meyers filed no new affidavits or evidence in opposition to the shipowner's latest motion for summary judgment. Instead, he relied on arguments of counsel, which referenced previously submitted evidence. Counsel for Captain Meyers emphasized both on brief and at argument the *Eugenio C* captain's testimony that while the seas were rough on both port and starboard, the starboard was worse. Counsel then argued that because the starboard was worse the *Eugenio C* must not have been heading directly into the wind, thus, a partial lee might have been afforded aft on the port side.

We begin by noting that counsel's argument is not a fair interpretation of what the *Eugenio C*'s captain said—the captain

---

**1.** Captain Meyers's other claims were disposed of in prior motions for summary judgment. *See Meyers v. M/V Eugenio C*, 842 F.2d 815 (5th Cir.1988); *Meyers v. M/V Eugenio C*, 876 F.2d 38 (5th Cir.1989) (panel rehearing).

**2.** We find it unnecessary to address the effect of various federal regulations specifying how rope ladders must be used because we find Mr. Haveman's opinion, as one experienced in boarding vessels by way of rope ladders, sufficient to shift the burden of coming forward with evidence.

said the starboard was worse, but he did not offer any additional observation or explanations. Further, counsel's argument is inconsistent with Captain Meyers's deposition testimony and the uncontested statement of both parties on appeal that the *Eugenio C* was headed right into the 25–30 m.p.h. winds. Admittedly, the *Eugenio C* captain's statement is enough to create some metaphysical doubt about a partial lee, but metaphysical doubt is insufficient to defeat a motion for summary judgment.

We conclude that the *Eugenio C* captain's statement that the starboard was worse, standing alone, does not establish an issue for trial. We hold that Mr. Haveman's affidavit, corroborated by Captain Meyers's deposition testimony and the ship's blueprints, eliminates any issue of material fact concerning safer access through an aft port and shifts the burden of coming forward with countervailing evidence to Captain Meyers. Captain Meyers did not meet this burden.

### Failure to Warn

■ Captain Meyers also argues that material issues of fact exist respecting his claim that the shipowner negligently failed to warn him of the danger of boarding the *Eugenio C* in rough seas.[3]

In perspective, *Captain* Meyers, a bar pilot with twenty-seven years experience, is complaining that the shipowner did not warn him of the danger of boarding the *Eugenio C* in rough seas. Captain Meyers admits that he had boarded vessels in rough seas before, but adds that he had never boarded a grounded vessel in rough seas with no lee. The district court has twice granted the shipowner's motion for summary judgment noting Captain Meyers's experience and the open and obvious condition of the seas.

Captain Meyers cites *Johannessen v. Gulf Trading & Transp. Co.*, 633 F.2d 653 (2d Cir.1980), for the proposition that a shipowner has a duty to warn of dangerous

conditions. Captain Meyers's faith in *Johannessen* is misplaced. First, *Johannessen* is a Jones act case; second, it deals with the *sufficiency* of a warning; and third, the danger, gas in an empty tank, was not open and obvious.

■ By contrast, we have, at least implicitly, held that a shipowner is not required to warn of an open and obvious danger, particularly when the one asserting the duty to warn is in a better position because of expertise to discern and appreciate the danger. *Cf. Polizzi v. M/V Zephyros II Monrovia*, 860 F.2d 147 (5th Cir. 1988); *Casaceli v. Martech Int'l Inc.*, 774 F.2d 1322 (5th Cir.1985), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1516, 89 L.Ed.2d 914 (1986).

Given that Captain Meyers was undeniably an expert and that the rough seas he navigated to reach the *M/V Eugenio C* were undeniably open and obvious, we conclude that the district court was correct in ruling that the shipowner was entitled to summary judgment as a matter of law and explicitly hold that a shipowner does not have the duty to warn of an open and obvious condition if the one asserting the duty to warn was in a better position, by virtue of training or experience, to appreciate the danger.

### Motion for Sanctions

The final matter before us is the shipowner's motion for sanctions. Captain Meyers's position was weak, but we conclude that his arguments were not made in bad faith. Indeed, we determined that this case could not be decided without the benefit of oral argument. The motion for sanctions is denied.

### Conclusion

In accordance with what we have said, we AFFIRM the district court's grant of

---

**3.** As a preliminary matter, the shipowner argues that this issue was disposed of by our previous opinions. *See Meyers*, 842 F.2d at 815; *Meyers*, 876 F.2d at 38. Given our resolution of the issue, this argument has little practical significance, but we conclude that, reading our two earlier opinions in context, this issue is properly before us.

summary judgment in all respects and DENY the motion for sanctions.