Franco **MORALES** et al., Plaintiffs,

v.

**A.C. ORSSLEFF'S EFTF "XYZ", Defendants.**

**No. CIV. 96–1169.**

United States District Court, D. Puerto Rico.

Dec. 30, 1999.

---

Harry A. Ezratty, San Juan, PR, for Plaintiffs.

William A. Graffam, San Juan, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Plaintiff Franco Morales, a San Juan Harbor Pilot providing compulsory pilotage services, claims in a maritime jurisdiction complaint filed in this Court, that on August 22, 1995, he suffered an aggravation of a preexisting injury to his left shoulder while disembarking from the M/V Malene to a San Juan Harbor pilot boat. Plaintiff alleges that the injury was caused by the M/V Malene's crew's failure to provide him proper lee[1], further, that the pilot ladder position was improperly illuminated; and that the specific location where the pilot ladder was positioned was improper because Plaintiff was forced to disembark on the stern of the pilot boat, thus provoking a dangerous situation.

Defendant A.C. Orssleff's EFTF moves the Court for summary judgment arguing that "while Morales has made various allegations of negligence against the ship, the fact is that **his own testimony, that of his witnesses and the testimony of his previously designated expert,** clearly show that any injury he may have suffered was solely as a result of his own acts or omissions; that there was no fault or negligence on the part of the vessel or her crew; and therefore, his complaint must be dismissed

as a matter of law." (Docket No. 57, pg. 2).

The Court has examined the submissions of both parties and the accompanying depositions, affidavits and exhibits on file and concludes that a summary resolution is proper based on the admitted and uncontroverted facts and the applicable law. Accordingly, and for the reasons stated below, Defendant's motion is **GRANTED** (Docket No. 57) and Plaintiffs' complaint is **DISMISSED WITH PREJUDICE.** Plaintiffs' motion in limine (Docket No. 56) has become **MOOT.**

## I.

### Background

At approximately 2250 hours on August 22, 1995, the M/V Malene, a 180 foot motor vessel, prepared to navigate out of the San Juan Harbor. Pursuant to Puerto Rico's compulsory pilotage laws, the M/V Malene received Plaintiff Franco Morales on board as the harbor pilot designated by the Puerto Rico Ports Authority to safely pilot the vessel through and exit the San Juan Harbor. While on board, Mr. Morales gave all instructions and navigational orders for the ship's departure and maneuvering through the channels until the M/V Malene was outside the San Juan Harbor and ready for Mr. Morales to disembark on to a San Juan Harbor pilot boat. At approximately 2335 hours, when the vessel was about one-half mile outside of the San Juan Harbor, the pilot boat operator, Mr. René Solís, positioned the pilot boat in a way that Mr. Morales could disembark from the vessel onto the stern of the pilot boat. Mr. Morales then handed the M/V Malene's steering wheel to the vessel's captain and prepared to disembark by way of a pilot ladder rigged on the port side of the vessel, forward of the vessel's house and approximately 60 feet from the stern of the vessel. Mr. Morales instructed the

---

1. Plaintiff defines the term "lee" "as that area where as the vessel goes around, it's blocking the wind and the swell and the other side of the vessel becomes calm." Deposition of Morales at pg. 23, Docket No. 57, Exh. 4.

captain of the M/V Malene to bring the vessel to 335 degrees from the vessels' course so that the vessel would come left and provide Mr. Morales lee to disembark through the ladder. Mr. Morales then climbed down the ladder and waited until the conditions were proper for him to transfer from the pilot ladder on the M/V Malene to the pilot boat. While he waited, Mr. Morales instructed the M/V Malene's crew to tell the Captain that he could not disembark in the present conditions and that the Captain should "keep the vessel coming." Docket No. 57, Exh. 4, pg. 24. The M/V Malene's captain twice started making the turn as requested by Mr. Morales, then, as per Mr. Morales's own deposition testimony, "when I saw that I could grab the [pilot boat's] rail safely and get off the [M/V Malene], the [M/V Malene] went up and the [pilot] boat went down again. Again they called the captain, the captain came out. On the second time, the [pilot] boat seems to steady and that's when I grabbed the rail and I let go of the ladder. As I grabbed the rail, the [pilot] boat went down and my foot was still up on the step of the ladder and my body was going down, landing against the bulkhead of the ladder [sic, should read "boat"] with my left shoulder." Docket No. 57, Exh. 4, pg. 4.

As a result of these facts, Mr. Morales and his wife, Gloria Villarubio, sued the M/V Malene's shipowner seeking compensation for damages caused by the negligence and unseaworthiness of the M/V Malene. As potential causes for the alleged injury, Plaintiffs alleged Defendant's failure to have a ladder for pilot egress at a safe location aboard the M/V Malene; Defendant's failure to make a lee for safe pilot egress as requested by pilot; and Defendant's failure to properly illuminate the area of egress so that the pilot could properly and safely leave the M/V Malene.

## II.

### Standards for summary judgment

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodriguez v. P.R.T.C.*, 110 F.3d 174, 178 (1st Cir.1997). Accordingly, federal courts will grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV. P. 56(c).

To defeat a motion for summary judgment the resisting party will have to show the existence of "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if the same "potentially affect[s] the suit's determination." *Garside v. Osco Drug Inc.*, 895 F.2d 46, 48 (1st Cir.1990). "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry*, 111 F.3d at 187. Nonetheless, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996) (citations omitted)

The movant for summary judgment, of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." *Vega–Rodriguez*, 110 F.3d at 178. Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment." *Cortes–Irizarry*, 111 F.3d at 187. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence

such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood ..." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

## III.

## Issues of fact

Admittedly, the record in the instant case presents several controverted questions of facts concerning, for example, whether or not the M/V Malene was in position to provide proper lee when Mr. Morales disembarked the vessel, whether or not the pilot ladder was positioned in the safest location for Mr. Morales to disembark the vessel, and whether or not Mr. René Solís witnessed Mr. Morales's fall on the night of August 22, 1995. *See* Plaintiffs' opposition to summary judgment, Docket No. 55. Still, as previously discussed, it is not the existence of an issue of facts which prevents summary judgment, rather the existence of a **genuine** issue of **material** facts. Thus, it is not enough for the party opposing summary judgment to blindly assert that there is a controversy of facts, to demonstrate a controversy as to peripheral facts, or to create some "metaphysical doubt" about the controlling facts. *Meyers v. M/V Eugenio C*, 919 F.2d 1070 (5th Cir.1990). Where that is the case, the Court should not hesitate to render summary judgment.

In support of Defendant's motion for summary judgment, Defendant has accompanied a list of uncontested facts with references to several portions of the record which support each statement. Many of these facts are peripheral to the question before the Court, but others are relevant and controlling. Plaintiffs have only attempted to create a controversy as to a handful of those facts which the Court considers minimally relevant, and not genuine nor material facts to the controversy.[2] Further, the facts that Plaintiffs have not contested are sufficient for the Court to enter summary judgment. Specifically, Plaintiffs have not contested and, thus, the Court deems uncontroverted in accordance with FED. R. CIV. PROC. 56(e), the following relevant statements of facts:

7. In the early morning hours of August 22, 1995, the M/V Malene arrived in San Juan Harbor with a cargo of steel from Tampico, Mexico. Discharge was completed that same day at 2050 hours, and at 2250 hours pursuant to the compulsory harbor pilotage law of the Commonwealth of Puerto Rico, the M/V Malene received on board the harbor pilot designated by the PRPA, Mr. Franco Morales.

8. Pilot Morales gave all instructions and navigational orders for the undocking and maneuvering of the M/V Malene through the channel of the San Juan Harbor until she was outside of the same, up to and including the positioning of the vessel for his disembarkation.

9. At 2335 hours, pilot Morales disembarked from the M/V Malene.

18. Morales did not request that the ladder be re-rigged at any other location.

30. Morales' own description of how he injured himself was that he stepped from the pilot ladder into the pilot boat

**2.** Plaintiff did not fully comply with Local Rule 311.12 (the anti-ferreting rule) by referencing on the record all the controverted and uncontroverted facts. *Stepanischen v. Merchants Despatch Transport Corp.*, 722 F.2d 922, 933 (1st Cir.1983); *Dominguez v. Eli Lilly & Co.*, 958 F.Supp. 721, 727 (D.P.R. 1997); *A.M. Capen's Co., Inc. v. American Trading & Prod.*, 973 F.Supp. 247, 256 (D.P.R. 1997). Notwithstanding, the deficiency is not at all outcome determinative in the instant case.

when he deemed it safe to do so. Yet, as he grabbed the rail of the pilot boat and let go off the pilot ladder, the pilot boat went down on a swell and he allegedly injured himself.

31. The methodology of transferring from a pilot ladder to a pilot boat requires the observations of the relative movement of the two vessels and choosing the optimal moment at which time the transfer is safe to accomplish.

32. The pilot, and only the pilot, is responsible for determining this movement and when it is safe to let go of the pilot ladder and grab the rail of the pilot boat.

36. After hearing Morales' narration of what transpired on the evening of 22 August 1995, Morales' own previously designated expert witness testimony was as follows: "I felt that Morales had made a mistake in disembarking from the vessel without a proper lee and was concerned since it is the pilot's responsibility to make sure that the vessel is giving him the proper lee before he disembarks."

37. On November 11, 1998, after reviewing considerable evidence and documents relating to this case, as described in paragraph 24 of his own Sworn Statement, pilot Dos Santos, plaintiff's previously designated expert witness, stated that he "[B]elieved Morales exercised poor judgment in disembarking as he did, when he did and that from his review of the documents he did not see anything which would indicate that there was fault or negligence on the part of the vessel and her crew."

## IV.

### Applicable law

Under P.R. Laws Ann. tit. 23, § 2412, a pilot is liable for negligence while piloting a ship. Consequently, "the shipowner is not liable for the negligence of the pilot in the navigation of the ship," Restatement (second) of Agency § 233, nor can the master of the ship take control of the vessel absent an extraordinary situation, manifest incompetency or gross negligence. *See The China,* 74 U.S. (7 Wall) 53, 19 L.Ed. 67 (1868); *Evans v. United Arab Shipping Co. S.A.G.,* 4 F.3d 207, 218–219 (3rd Cir.1993). Mr. Morales boarded the M/V Malene as the compulsory harbor pilot assigned by the Puerto Rico Ports Authority to navigate the vessel out of the San Juan Harbor. As per Mr. Morales's own testimony, Mr. Morales took control of navigation of the M/V Malene from the moment he boarded the vessel for navigation out of the San Juan Harbor up until he was disembarking.[3] Mr. Morales also admitted that the M/V Malene's Captain was following Mr. Morales's instructions on how to position the vessel for him to disembark and that it was Mr. Morales who misjudged the safety of the disembarking conditions and fell as a result of his error. Mr. Morales stated that:

> As I asked, and [the Captain] would run back in and I guess he would put more [wheel] to the ship and the ship would have then come down. By that time, not only would the ship help the swell, but the swell would ease down with the boat and as the boat came up, **I saw that it was safe enough for me to grab the boat and release the ladder and that's what I did. It so happened that as I let go of the ladder and the boat just went down, the swell, went down, and I went down with it.**[4]

Docket 57, Exh. 4, pg. 25. Thus, Mr. Morales's own testimony supports a finding that Defendant did not proximately

---

**3.** Mr. Morales admitted at pages 20 to 21 of his deposition that "the minute [the pilot] come[s] aboard the vessel, the Captain will just stand by and you [the pilot] do all the maneuvers... It was all my doing until I left the vessel."

**4.** Under these particular facts proper lighting and/or positioning of the ladder is totally immaterial.

cause his alleged injury. Rather, Mr. Morales's deposition testimony reveals that the accident was caused by his own negligence in failing to properly coordinate the movements of the M/V Malene and the pilot boat at the time he disembarked and in his failure in timely grabbing onto the rail of the pilot boat while releasing from the ladder when it was not properly safe to do so. Plaintiff clearly miscalculated the ocean swell, causing fall on his shoulder in the pilot boat. This negligence is not attributable to Defendant, nor is it so gross or does it signal such incompetence as to have required the M/V Malene's captain to take control of the vessel's navigation.

Even if Mr. Morales's testimony were not so clear as to the question of negligence and causation, the Court would still find that Mr. Morales was negligent and that it was his own negligence which proximately caused his injuries. The Court explains. In *Meyers,* 919 F.2d at 1073, a compulsory bar pilot sought damages against a vessel owner for injuries sustained while boarding the Defendant's vessel. The bar pilot claimed that the vessel owner was liable for failure to provide a safer access for boarding and for failure to warn of the danger in boarding during rough seas. As to the failure to warn, the Court held that "a shipowner is not required to warn of an open and obvious danger, particularly when the one asserting the duty to warn is in a better position of expertise to discern and appreciate the danger." Citing *Cf. Polizzi v. M/V Zephyros II Monrovia,* 860 F.2d 147 (5th Cir. 1988); *Casaceli v. Martech Int'l Inc.,* 774 F.2d 1322 (5th Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1516, 89 L.Ed.2d 914. The Court then held that the bar pilot was an expert on boarding vessels and that the rough seas he navigated to reach the mo-tor vessel were undeniably open and obvious, thus, the shipowner was entitled to summary judgment as a matter of law.

This Court concludes that Mr. Morales is an expert on disembarking motor vessels at sea, especially in the area outside of the San Juan Harbor, and that the conditions that made disembarking the M/V Malene unsafe were "open" and "obvious" as in *Meyers* and should have been known to Mr. Morales. Further, the Court finds that Mr. Morales was in fact aware that the conditions for disembarking the M/V Malene were dangerous and that Mr. Morales could have waited for them to be safe or could have instructed the pilot boat or the M/V Malene to alter their position or the pilot ladder's position so as to prudently disembark from the vessel to the pilot boat.[5] Mr. Morales, however, instructed the M/V Malene's captain to put wheel to the ship, enabling him to have a proper lee, but he did not wait long enough for the lee to be provided. Instead, Mr. Morales began to disembark at an imprudent moment, thinking safe conditions to disembark existed. Unfortunately, disembarking at that time was not yet safe and, consequently, as Mr. Morales grabbed onto the rail of the pilot boat the ocean's swell pulled the pilot boat down and Mr. Morales "went down with it." Docket No. 57, Exh. 4, pg. 25.

Given that Mr. Morales was an expert on disembarking motor vessels at sea and that the conditions that made disembarking the M/V Malene unsafe were "open" and "obvious" as in *Meyers,* the Court holds that Defendants owed no duty to warn Mr. Morales of the danger that he was facing when he was about to disembark the M/V Malene. Also, given that Mr. Morales was the harbor pilot on board

---

5. The evidence on the record shows that pilots in the San Juan Harbor customarily disembarked small vessels like the M/V Malene by disembarking onto the stern of the pilot boat (Captain Montes's deposition, Docket 57, Exh. 9, pgs. 52–53; René Solís's Declaration, Exh. 5, ¶ 25) but that René Solís would have picked up Mr. Morales along the side or in the bow of the pilot boat had Mr. Morales requested him to do so. (René Solís's Declaration, Exh. 5, ¶ ¶ 26–27). Mr. Morales, however, did not request to disembark the M/V Malene from any location other than that where the pilot ladder was rigged nor did he request that René Solís pick him up somewhere other than the stern of the pilot boat.

the M/V Malene when he allegedly suffered the injuries, the Court holds that it was Mr. Morales that was controlling the vessel and that Mr. Morales should have instructed the M/V Malene's crew to rig the pilot ladder in another more proper location (if necessary); further, he should have awaited until the motor vessel's captain provided under his instructions adequate lee for disembarking, and should have required that proper lighting be provided at the pilot boat or the M/V Malene, if necessary, for disembarking. Mr. Morales, an expert in disembarking from vessels to pilot boats, did none of the above. Therefore, the Court concludes that it was Mr. Morales's own negligence, not Defendant's, that proximately caused his injury.

Defendant's motion for summary judgment is, therefore, **GRANTED** and Plaintiffs' Complaint is **DISMISSED** with prejudice. Judgment to be entered accordingly.

IT IS SO ORDERED.

### JUDGMENT

For the reasons set forth in the Opinion and Order of this same · date, the above captioned Complaint is **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.