Clinton **ROBINSON**

v.

**MORRIS MOORE CHEVROLET–BUICK, INC.**

No. 1:96–CV–424.

United States District Court,
E.D. Texas,
Beaumont Division.

May 22, 1997.

Daniel Packard, Packard & Packard, Beaumont, TX, for Plaintiff.

Clint Lewis, Lewis & Associates, Beaumont, TX, for defendant.

### MEMORANDUM RE: DEFENDANT'S MARCH 7, 1997 MOTION FOR SUMMARY JUDGMENT

HINES, United States Magistrate Judge.

Plaintiff Clinton Robinson, a former employee of defendant Morris Moore Chevrolet–Buick, Inc. brings this action under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301–4333, ("USERRA"), claiming he was improperly fired in retaliation for his absence from work due to obligations arising from his membership in the United States Army Reserves.

Morris Moore Chevrolet–Buick, Inc. ("Morris Moore") moves for summary judgment arguing that plaintiff claims under US-ERRA are wholly without merit, or alternatively, that it had other ample grounds for which to discharge Robinson and is thus has an affirmative defense under the Act. It asserts that there are no genuine issues as to any material fact and that it is entitled to summary judgment as a matter of law.

## I. BACKGROUND

Clinton Robinson was employed as a used car salesman at defendant Morris Moore a short period of time beginning in December 1995 and ending on February 29, 1996. During this period, Robinson also served as a reservist in the United States Army and worked part-time as a volunteer with the Vidor Police Department in Vidor, Texas.

In February 1996, Robinson notified his supervisor, Mike Croker, that he had to attend a mandatory physical examination for the reserves on February 23, 1996, and would therefore miss work at the Morris Moore dealership. An important sales event had been scheduled by Morris Moore for that same day. Croker asked Robinson whether attendance on that specific day was mandatory, to which Robinson replied he was unsure. Thereafter, Croker contacted Army Sergeant Angelina Craigan to determine whether Robinson's attendance was mandatory. She informed him that the physical was mandatory, and that Robinson had no discretion to choose a different time. Thereafter, Robinson was given permission by his supervisor at Morris Moore to miss work in order to attend the mandatory physical.

Less than one week after his February 23, 1996 military-related absence, Robinson was fired from his position with Morris Moore. Robinson claims that his firing was related to that absence. Morris Moore denies that claim, and asserts that Robinson's employment was terminated because of numerous absences from work, failure to meet company sales goals, frequent violations of employee rules, and overall deficient performance as an employee.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Defendant's Evidence and Argument

Morris Moore provides direct and indirect evidence in an effort to show that it was justified in terminating Robinson's employment for cause. First, it argues that it had a "legally sufficient reason" or legitimate, non-discriminatory reason for discharging Robinson. As direct evidence that the decision to fire Robinson was not motivated by his military service, Morris Moore includes a sworn affidavit of one of its supervisors, Mark Cricchio. Cricchio states that Robinson was advised several times of alleged violations of company policy with regard to attendance, arrival at work, amount of time permitted for lunch and over-all demeanor and attitude. Morris Moore also asserts Robinson allowed his work with the Vidor Police Department to interfere with his duties as its employee. For example, he would sit in his office and listen to a police scanner. Cricchio avers that he "had instructed that Mr. Robinson's employment be terminated on at least two prior occasions for his failure to adhere to company policy." Def.'s Mot. for Summ. J. Cricchio Aff. at 1. Further, it notes that on the day it fired Robinson, he arrived at work fifteen minutes late and was then granted permission, upon request, to leave for an hour to file a police report; however, Robinson did not return to work until nearly four hours after he left. Def.'s Br. in Supp. of Mot. for Summ. J. at 7.

Cricchio avers "[t]he combined effect of Mr. Robinson's multiple unexcused and prolonged absences from work, multiple instances of tardiness, and general failure to adhere to company guidelines with regard to performance at work contributed to the decision to terminate Mr. Robinson." Cricchio Aff. at 1. He concludes that "these incidents were in no way related to Mr. Robinson's participation in the United State[s] Army Reserves." Def.'s Mot. for Summ. J. Cricchio Aff. at 1.

Morris Moore also presents the sworn affidavit of Drew Donalson, President of Donalson Motor Company, Inc., for which Robinson worked from November 1, 1992 until December 17, 1993. Def.'s Mot. for Summ.

J. Donalson Aff. Donalson states that Robinson quit his position with that company after he failed to report to work two days in a row without an excuse, and had informed his employer that he did not show up because he was not happy selling cars and was quitting to pursue a different career. *Id.*

Based on these facts, Morris Moore asserts it would have fired Robinson regardless of his status as a reservist. Morris Moore concludes that even if the scheduling conflicts arising as a result of Robinson's military service had some role in his discharge, Robinson was fired because of his unacceptable job performance as determined by the totality of the situation, which included his frequent absences from work, his constant tardiness, and his below average sales. Morris Moore argues summary judgment is therefore proper as a matter of law because the mere existence of "mixed-motive" situations, one permissible and one forbidden reason for discharge, is not sufficient to establish liability under the Act.

**B. Plaintiff's Response**

Robinson responds that his required absence on February 24, 1996 caused his supervisor, Mike Croker, to become angry, which was the impetus for the termination of Robinson's employment with Morris Moore. Pl.'s Resp. at 2; Pl.'s Resp. Robinson Aff. at 1. In support of this assertion, he presents the sworn affidavit of Sergeant Angelina Craigan, who was on duty at the army reserve unit in Beaumont, Texas when Croker called inquiring as to whether Robinson's physical was mandatory. She avers that when she informed Croker that Robinson was required to attend the physical on February 24, 1996 "Croker became quite upset . . . [and] demonstrated obvious hostility toward the idea of Mr. Robinson leaving work to attend the physical." Pl.'s Resp. Craigan Aff.

Robinson avers that he "was selling well, and had never been disciplined or counseled" prior to requesting time off for the mandatory physical. Pl.'s Resp. at 2. He also asserts that Morris Moore's allegation that he missed several hours of work to complete police paperwork the day he was fired is false, and that he listened to the police scanner with his supervisors' permission and this activity did not interfere with his duties. *Id.* at 3. Further, he argues that although he was occasionally late in the morning and in returning from lunch, no one at Morris Moore complained of this fact and there were other employees who were late more often who were not disciplined. *Id* Robinson concludes that the criticisms of him by Morris Moore did not begin until after he requested time off for the mandatory physical. *Id.* at 4.

**III. DISCUSSION**

**A. Summary Judgment Standard**

A party is entitled to summary judgment upon a showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). All justifiable inferences must be drawn in favor of the non-movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Oliver Resources PLC v. International Fin. Corp.*, 62 F.3d 128, 130 (5th Cir.1995). Although the evidence is considered in the light most favorable to the non-movant, once the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the non-movant to come forward with competent summary judgment evidence establishing the existence of a material factual dispute. *McCallum Highlands, Ltd. v, Washington Capital Dus. Inc.*, 66 F.3d 89, 92 (5th Cir.1995) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir.1995) (citing *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509–10); see. *e.g., Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115 (5th Cir.1992); *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992).

To successfully oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that a genuine issue of material fact exists. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–22, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 184 (5th Cir.1995). A material fact is any fact "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Meyers v. M/V Eugenio C*, 919 F.2d 1070, 1072 (5th Cir.1990). The Fifth Circuit explains that "a genuine dispute requires more than a showing of some metaphysical doubt—there must be an issue for trial." *Meyers*, 919 F.2d at 1072 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). But any factual issues of controversy must be resolved in favor of the non-movant to the extent that the motion must be denied where facts specifically averred by the non-movant contradict facts specifically averred by the movant. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). In an employment discrimination case, focus is placed on determining whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *Armstrong v. City of Dallas*, 997 F.2d 62, 65–66 (5th Cir.1993).

## B. Claims under USERRA

In 1994, Congress enacted the "Uniform Services Employment and Reemployment Rights Act of 1994," which prohibits employment discrimination on the basis of military service, 38 U.S.C. § 431 (Supp. 1997), and provides a private right of action for enforcement of rights under the Act, 38 U.S.C. § 4323 (Supp.1997). USERRA replaced the Veterans' Reemployment Rights Act ("VRRA") on October 13, 1994.

Section 4311(b) of USERRA provides that: "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person ... has exercised a right provided for in this chapter." 38 U.S.C. § 4311(b). Section 4311(a) provides that: "[a] person who is a member of ... a uniform service shall not be denied ... retention in employment ... on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a). Section 4311(c)(1) provides that: "[a]n employer shall be considered to have engaged in actions prohibited under subsection (a) [of USERRA], if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." *Id.* § 4311(c)(1).

There is no published Supreme Court or Fifth Circuit precedent addressing claims under USERRA. Therefore, the court refers to cases from other circuits and district courts within this circuit for principles of analysis. The court also relies on other employment discrimination cases to determine the proper definition of related legal concepts, e.g., terms such as "motivating factor" and "but-for," and the proper framework of analysis.

 The burden-shifting framework approved by the Supreme Court in *NLRB v. Transportation Management Corp.* is used to determine whether an employer discharged a reservist in violation of the USERRA. *Gummo v. Village of Depew, NY*, 75 F.3d 98, 106 (2d Cir.1996), *cert, denied*, —— U.S. ——, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996); *see NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983). Under that framework, the plaintiff is first required to establish a prima facie case of discrimination by showing by a preponderance of the evidence that his protected status was a motivating factor in the adverse employment action.[1] 38 U.S.C. § 4311(b); *Gummo*, 75

---

1. USERRA replaced the "sole clause" standard of VRRA with a "motivating factor" standard.

F.3d at 106. The term "motivating factor" means that if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 250, 109 S.Ct. 1775, 1790, 104 L.Ed.2d 268 (1989) (addressing Title VII gender discrimination claim and related affirmative defense). In other words, Robinson's military position and related obligations were a motivating factor in Morris Moore's decision if it relied upon, took into account, considered, or conditioned its decision on Robinson's military-related absence. *See Hopkins,* 490 U.S. at 241–242, 109 S.Ct. at 1786.

If this is established, the defendant may, nonetheless, escape liability by showing by a preponderance of the evidence, as an affirmative defense, that it would have made the same decision without regard to the employee's protected status. 38 U.S.C. § 431 1(c)(1); *Gummo,* 75 F.3d at 106; *see Transportation Management Corp.,* 462 U.S. at 400, 103 S.Ct. at 2473; *see also Hopkins,* 490 U.S. at 242–44, 109 S.Ct. at 1786–88.

■ The Supreme Court has stated that proving " 'the same decision would have been justified . . . is not the same as proving that the same decision would have been made' " in mixed-motive cases. *Givhan v. Western Line Consol. Sch. Dist.,* 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619. Further, an employer cannot meet its burden in such a case by "merely showing that at the time of the decision it was motivated only in part by a legitimate reason." *Hopkins,* 490 U.S. at 252, 109 S.Ct. at 1792. Rather, the employer must show that its legitimate reason, standing alone, would have induced it to make the same decision. *Id.*

Thus, proper analysis, in connection with Morris Moore's summary judgment motion, requires a determination of (a) whether there is sufficient evidence from which a rational jury may infer that Robinson's position with the reserves or related conduct as a reservist was a substantial or motivating factor in his dismissal; and (b) if there is such evidence, whether it can be said as a matter of law that Morris Moore would have discharged him even if he had not been a reservist.

## C. Prima Facie Case under USERRA

■ It is undisputed that Robinson was a member of the uniformed services during the period he was employed by Morris Moore, and that his military obligations required his periodic absence from that employment. Robinson bears the burden of showing that his reservist status or related activities played a motivating part in Morris Moore's decision to terminate his employment. But Robinson need only show that a genuine issue of material fact exists as to whether Morris Moore was motivated by his military service to survive the motion for summary judgment.

The summary judgment evidence, taken in the light most favorable to Robinson, indicates no employer complaints regarding Robinson's performance prior to his request for leave to attend the mandatory military physical. Robinson's supervisor was angered by this request and the resulting absence. Complaints regarding Robinson's work performance and accompanying threats of termination then began to surface. Robinson was fired within days of his absence from work on February 29, 1996 due to that physical. Finally, Robinson asserts the reasons given by Morris Moore to justify its decision to discharge him were not told to him prior to this lawsuit.

Thus, Robinson has alleged a chronology of events from which it may plausibly be inferred that his absence due to reserve related obligations was a motivating factor for his discharge. Regardless of his prior attendance record and work performance, Robinson provides competent summary judgment evidence sufficient to show a prima facie case that his absence due to his reservist's responsibilities on February 24, 1996 may have been a motivating factor in the decision by Morris Moore to fire him a few days later. *See Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir.1993) (noting close timing between an employee's protected activity and an adverse action against him may provide

38 U.S.C. § 431 1(c)(1); *see Newport v. Ford Motor Co.,* 91 F.3d 1164, 1167 (8th Cir.1996).

the causal connection required to make out a *prima facie* cause of action for retaliation). This is bolstered by defendant's position that its decision was based upon the totality of circumstances, which included Robinson's attendance record. Thus, it is possible that it may have also been motivated by his reserve-related absences.

## D. Defendant's Affirmative Defense

■ Morris Moore argues that it is entitled to summary judgment even if Robinson's military-related absences played a role in his discharge because it would have fired him anyway. Def.'s Br. in Supp. of Mot. for Summ. J. at 9. Specifically, it argues that Robinson would have been fired because he was frequently late to work and often left work without permission, and he violated numerous rules while at work. *Id.* Morris Moore argues it is therefore entitled to summary judgment under what it refers to as the "mixed-motive" rule of Section 4311(b).

Morris Moore relies on the case of *Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994) to support its argument. In *Pignato,* an airline employee alleged that the defendant-employer's decision to fire him was influenced by ongoing conflicts involving his work schedule and commitments related to his service in the military reserves. The court stated that "the mere existence of mixed motives—one permissible, one forbidden—is not enough to establish liability. The forbidden motive, [military status in this case], must be a sufficient condition, or but-for cause, of the employee's termination." *Id.* at 349 (quoting *Visser v. Packer Eng'g Assocs.,* 924 F.2d 655 (7th Cir.1991)). The court determined that Pignato failed to prove that defendant's proffered reason for firing him was pretextual, and thus found defendant's explanation to be, if not the sole reason, a significant motivation for his firing. *Id.* The court then concluded that "any influ-

ence his ongoing job dispute may have had on the decision was not a 'but-for cause.' " *Id.*

Defendant cites *Pignato* for the proposition that the employer is entitled to judgment where there is ample evidence of other reasons for the employee's discharge, even if the employee's military service played some role in the employer's decision. However, *Pignato* is not persuasive for several reasons. First, it does not deal with a summary judgment decision,[2] and it would therefore be inappropriate to rely on that case as establishing the relevant summary judgment standards. Second, the *Pignato* court seems to follow a flawed analytical model that conflicts with the shifting burden established under the Act and *NLRB v. Transportation Management Corp.* as well as with analogous principles of analysis articulated by the Supreme Court in *Hopkins.* Finally, even if the framework used in *Pignato* was followed, the facts in the instant case are not analogous.

First, Pignato purposefully created the conflicts in his schedule by bidding for flight assignments, or "lines," on days that conflicted with his military obligations. Although Pignato was aware of his military obligations well in advance and could have avoided conflicts simply by bidding on non-conflicting flight assignments, he purposefully bid on conflicting ones so as not to use his personal time to fulfill his military obligations. Second, Pignato deliberately violated defendant's policies by lying in order to use a "sick" day to excuse himself from working when he was not, in fact, sick.[3] In the instant case, there is no evidence that Robinson deliberately created conflicts between his work and military schedules. Further, the evidence taken in the light most favorable to Robinson indicates that he did not deliberately violate company policies or procedures in a manner

---

**2.** The district court denied defendant ATA's motion for summary judgment based on its finding that genuine issues of fact existed as to whether ATA "discharged or otherwise disadvantaged" Pignato because of his military obligations.

**3.** The court concluded that
A rational employer might very well fire an employee who refused to show up for work

when he was scheduled to work, who thereby caused inconvenience and expense to other employees and the company, who then made up an excuse for his absence, and who flaunted his lack of responsibility by getting drunk at the firm Christmas party when he was supposedly too sick to work.
*Id.* at 349.

that could be characterized as "gross misconduct" or "a serious demonstration of irresponsible behavior." *See Pignato*, 14 F.3d at 346 (noting that because defendant-employer found plaintiffs lying in order to take "sick" leave so serious, it chose to fire him immediately without first imposing a lesser sanction).

Morris Moore presents evidence designed to establish that Robinson was an unsatisfactory and unhappy employee. That evidence might well prevail at trial, but it is insufficiently strong to establish as a matter of law that his military service was not a motivating factor in the decision to terminate him. Moreover, defendant asserts that it was the "synergetic effect of plaintiffs violations," most of which apparently related to his absence from work, that led to the decision to fire Robinson. Defendant has failed to show that this synergism would have been sufficient to lead it to discharge Robinson without its consideration of his absence on February 23, 1996 as a result of his military obligations.[4] Def.'s Resp. at 6; *see also* Def.'s Mot. for Summ. J. Cricchio Aff. at 2; Def.'s Mot. for Summ. J. Croker Aff. at 1.

Thus, Morris Moore has failed to show that its legitimate reason, standing alone, would have induced it to make the same decision. *See Hopkins*, 490 U.S. at 252, 109 S.Ct. at 1792. Thus, Morris Moore has failed to prove that it is entitled to summary judgment on the basis of the affirmative defense under Section 4311.

## IV. CONCLUSION

Viewed in the light most favorable to the non-movant, the pleadings show that Robinson has stated a prima facie case under the

relevant statute, and a material issue of fact regarding defendant Morris Moore's motivation for firing plaintiff Robinson remains unresolved. Further, Morris Moore has failed to prove, as a matter of law, that it would have fired Robinson even if it had not allowed his reservist-related absence play a role in that decision.

In short, this is a classic case where the necessity to hear testimony from witnesses in order to determine the credibility of the arguments creates genuine issues of material fact. Therefore, summary judgment is improper, and a separate order will be entered denying defendant's motion.

---

4. In order to successfully assert its affirmative defense, Morris Moore must show that it would have discharged Robinson regardless of his military position or his fulfillment of service-related obligations.

This burden is identical to the but-for construct of causation. To determine whether a particular factor, such as military service, was a but-for cause of a given event or decision, that factor is assumed to be present at the time of the decision, and then it is necessary to determine whether, even if that factor had been absent, the same decision nevertheless would have made. *Hopkins*, 490 U.S. at 240, 109 S.Ct. at 1785.