Andrew C. SANGUINETTI, Plaintiff,

v.

UNITED PARCEL SERVICE, INC., a
Florida corporation, Defendant.

No. 99–6235–CIV.

United States District Court,
S.D. Florida,
Northern Division.

Aug. 8, 2000.

**1314**

Albert L. Frevola, Douglas Todd Marx, Conrad & Scherer, Robert David Soloff, Fort Lauderdale, FL, for Plaintiff.

Thomas Holland Loffredo, Eric Keith Gabrielle, Holland & Knight LLP, Fort Lauderdale, FL, for Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

RYSKAMP, District Judge.

THIS CAUSE came before the Court on the defendant's motion for summary judgment. [DE 57] The plaintiff has responded and the defendant has replied. Oral argument was heard in open court on July 27, 2000. This motion is ripe for adjudication.

### I. BACKGROUND

This is an action brought by plaintiff Andrew C. Sanguinetti ("Sanguinetti") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, et seq., and the Uniform Services Employment and Reemployment Rights Act ("USERRA"). 38 U.S.C. § 4301, et seq.,[1] against his former employer, United Parcel Service, Inc. ("UPS"), for discrimination based upon gender and military service obligation.

Defendant UPS is one of the nation's largest package delivery services which operates throughout the United States and the world.[2] In December 1982, plaintiff became employed with UPS, but voluntarily left employment in 1983 to join the United States Marine Corps for active duty until 1987. In October 1987, plaintiff returned to UPS full-time as a Package Car Driver. Plaintiff was promoted in March of 1994 to Package Car Supervisor, which constituted a promotion from an hourly position to a management position. Plaintiff was initially stationed at UPS's Fort Lauderdale facility, but was subsequently transferred in April 1995 to UPS' Hialeah facility.

UPS had a "no-dating" rule which discouraged managers from maintaining personal, sexual relationships with other UPS employees. Plaintiff admits that this rule was discussed with him during his interview process leading up to the promotion.[3]

---

1. Plaintiff's original complaint also contained counts for retaliation under Title VII, invasion of privacy, and intentional infliction of emotional distress. UPS moved for dismissal of these counts which the Court granted by Order dated June 16, 1999.

2. The background facts and information are taken from the parties' Statement of Material Facts.

3. The parties dispute the nature of the "no-dating" rule. While UPS characterizes its "no-dating" policy as "strict," "zero-toler-

Upon promotion to supervisor, plaintiff was provided with the UPS Impartial Employment and Promotion Guide and the UPS Policy Book, and attended a sexual harassment training seminar. These materials encouraged supervisors to maintain "professional relationships" with other employees, and discouraged relationships which might create any perceived favoritism or liability.[3]

In 1995, plaintiff reenlisted with the Marine Corps Reserves. In June 1997, plaintiff received orders from the Marine Corps requiring him to attend an eight-month training school which changed his status from reserve to active. Plaintiff immediately told his direct supervisor, Thomas Acquaviva ("Acquaviva") and provided him with a copy of the order. Despite attempts by plaintiff and Acquaviva to have plaintiff relieved of the orders, they were unsuccessful and plaintiff was scheduled to depart in August 1997.

In 1995, plaintiff began a relationship with a UPS hourly employee, Marjorie Marvel ("Marvel"). This relationship continued for over two years until July 19, 1997, when plaintiff told Marvel he had decided to terminate the relationship and return to his wife and children. The next evening, Marvel visited plaintiff's home and threatened to disclose their relationship to UPS and get plaintiff fired. The next morning, Monday, July 21, 1997, plaintiff approached the South Florida District Manager Ed Gill ("Gill") and complained of sexual harassment by Marvel, disclosing the history of his relationship with Marvel and Marvel's threats to disclose their relationship to UPS in retalia-

tion for his ending their relationship. After receiving the report, Gill sent Stan Purvis, Security Manager for the South Florida District, and Herman Radish, Health and Safety Manager for the South Florida District, to investigate plaintiff's complaints. Both plaintiff and Marvel were contacted and interviewed. The next week, plaintiff was told that due to the situation created by his personal, sexual relationship with Marvel, he had the opportunity to resign or would be terminated. Plaintiff refused to resign and was subsequently terminated.

## II. DISCUSSION

### A. Standard on Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "*Some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). "For factual issues to be considered genuine, they must have a real basis in the record." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir.1993). The Court will enter summary judgment if, after adequate time for discovery, a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and

ance," and grounds for discharge, plaintiff contends that his understanding of the rule was that UPS "discourage[s] relationships between people who work" for certain managers.

3. The Guide states in relevant part:

Relationships between employees other than professional relationships, can lead to detrimental effects in the workplace with customers; affect the respect, dignity and rights of co-workers; and may incur liabili-

ty on the part of our company. Unprofessional relationships potentially expose participants and our company to allegations of sexual harassment, favoritism, conflict of interest and breach of confidentiality. Each of us has the responsibility for creating and maintaining professional relationships.

(Guide, p. 18). The UPS Policy Book also states that UPS managers have "the responsibility to avoid any relationships that may result in actual or perceived favoritism." (Policy Book, p. 32).

on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); FED. R. CIV. P. 56(c).

In considering a motion for summary judgment the Court views the facts in the light most favorable to the nonmoving party. *See Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). The Court is not, however, permitted to consider inadmissible or incompetent evidence. *See Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991) (court should disregard portion of evidence which contains legal conclusions or inadmissible evidence), *cert. denied sub nom., Christic Institute v. Hull,* 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). The Court may not consider conclusory allegations. *See id.* What are considered the "facts" at this stage may not turn out to be the actual facts if the case goes to trial, but these are the facts for summary judgment purposes. *See Cottrell v. Caldwell,* 85 F.3d 1480, 1486 (11th Cir.1996).

To defeat a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *See Evers v. GMC,* 770 F.2d 984, 986 (11th Cir.1985). "Once a party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. GMC,* 758 F.2d 839, 840 (2d Cir.1985).

### B. Gender Discrimination Claim

Claims for race, national origin, and gender discrimination are governed by Title VII. The statute provides in pertinent part:

> It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, privileges of employment, because of

such individual's race ... sex ... or national origin.

42 U.S.C. § 2000e–2(a).

A plaintiff may establish a claim for disparate treatment based upon direct evidence of discrimination motivating the employment decision at issue, or by producing circumstantial evidence sufficient to allow an inference of discrimination. *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 641 (11th Cir.1998). In this case, Sanguinetti offers circumstantial evidence of discrimination.

Disparate treatment claims based upon circumstantial evidence are subject to the following analysis, with the burden of proof remaining with the Plaintiff at all times: (1) Plaintiff must establish a prima facie case of discrimination, (2) if Plaintiff states a prima facie case, Defendant must offer evidence of a legitimate, nondiscriminatory reason for its actions, and (3) to prevail, Plaintiff must then prove that the reason offered is in fact a pretext for intentional discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–253 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–06, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973).

In order to establish a prima facie case of gender discrimination, plaintiff must show that (1) he is a member of a protected class, (2) he was subjected to an adverse job action, (3) his employer treated similarly situated employees not within the protected class more favorably, and (4) he was qualified to do his job. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). It is undisputed that plaintiff is a member of a protected class, was subject to an adverse job action, and was qualified for his position. *See Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1360 (11th Cir.1999)(holding qualification presumed where plaintiff previously held the position). However, defendant argues that plaintiff cannot establish a prima facie case because he has failed to

show a similarly situated female employee who was treated more favorably than plaintiff.

### 1. Similarly Situated.

■ It is fundamental that in order to compare the discrimination experienced by plaintiff to that of other employees outside his protected category, "the plaintiff must show that he and the employees are similarly situated in all relevant aspects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)(citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992)). Courts have found that to be "similarly situated," the individuals with whom plaintiff seeks to compare himself must have: (1) dealt with the same supervisor, (2) been subject to the same standards, and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992); *Patterson v. Wal–Mart Stores, Inc.*, 1999 WL 1427751, *8 (M.D.Fla. Dec. 22, 1999). The Eleventh Circuit has recognized that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989). The failure to show a common supervisor "alone probably precludes a showing of similarity because 'when different decisionmakers are involved, two decisions are rarely similarly situated in all relevant aspects.'" *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2000)(quoting *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 910 (8th Cir.1999)). Finally, "it is necessary to consider whether the employees are involved or accused of the same of similar conduct and are disciplined in different ways." *Holifield*, 115 F.3d at 1562.

■ In this case, plaintiff alleges that he was discriminated against when he made the internal report of sexual harassment and in the application of the "no-dating" rule. Plaintiff offers two categories of female employees who he claims are similarly situated. First, plaintiff alleges that other female employees within the South Florida District, including at least one female in the Fort Lauderdale or Hialcah facilities, complained of sexual harassment and were not terminated. What plaintiff fails to recognize, however, is that these other female employees did not engage in the same conduct, *i.e.*, they did not admit to a unprofessional sexual relationship with their alleged harasser at the same time they reported the harassment. Plaintiff has failed to show that any of these other female employees also admitted to sexual relationship with their alleged harasser. This difference in their conduct is wholly sufficient to distinguish these other female employees from the plaintiff. Also, these other female employees were not alleged to be in managerial positions, and thus, were not subject to the same "no-dating" policy to which plaintiff, as a supervisor, was bound.

■ Second, plaintiff offers the example of Bernice Prestianni, the plaintiff in the Fourth Circuit case of *Prestianni v. UPS, Inc.*, 149 F.3d 1170, 1998 WL 276455 (4th Cir.1998)(unreported case). Plaintiff alleges Prestianni was a female management employee who violated the "no-dating" rule and was not immediately terminated, but offered an opportunity to end the relationship. Although Prestianni also held a managerial position, plaintiff cannot establish that they are similarly situated in all relevant aspects since they were supervised by completely different managers, in two entirely different regions. Plaintiff worked in UPS' South Florida District and Prestianni was employed by UPS in Maryland. "Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." *Radue*, 219 F.3d 612, 618–19. Given the lack of a common supervisor and geographic region, the Court finds that Prestianni is not a similarly situated comparator for purposes

of Title VII. Thus, plaintiff has failed to establish the "similarly situated" prong of his prima facie case. Sanguinetti has failed to present any other evidence that would establish an inference of discriminatory animus against the plaintiff on the basis of his gender. Accordingly, since plaintiff has failed to carry his initial burden of establishing a prima facie case, and there is no other evidence of gender discrimination, summary judgment is granted in favor of the defendant.[4]

## C. USERRA Violation Claim

■ The Uniformed Services Employment and Re-Employment Rights Act ("USERRA") prohibits an employer from denying any benefit of employment to a member of the uniformed services on the basis of his military obligation. 38 U.S.C. § 4311(a), (c)(1). Courts which have interpreted USERRA indicate that the burden-shifting framework approved by the Supreme Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), is used to determine whether an employer discharged a reservist in violation of USERRA. *See Gummo v. Village of Depew, NY*, 75 F.3d 98, 106 (2d Cir.1996), *cert. denied*, 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996). To recover under USERRA, Sanguinetti must initially establish a prima facie case of discrimination by showing that his military status was a substantial or motivating factor in UPS' decision to terminate. *Id.*; 38 U.S.C. § 4311(c).

■ A "motivating factor," is not necessarily the sole cause of the action, but rather it is one of the factors that "a truthful employer would list if asked for the reasons for its decision." *Brandsasse v. City of Suffolk. Va.*, 72 F.Supp.2d 608, 617 (E.D.Va.1999)(quoting *Kelley v. Maine Eye Care Associates, P.A.*, 37 F.Supp.2d 47, 54 (D.Me.1999)). "Military status is a

motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Robinson v. Morris–Moore Chevrolet–Buick, Inc.*, 974 F.Supp. 571, 576 (E.D.Texas 1997). If this is established, the employer may avoid liability if he can demonstrate that it would have made the same decision without regard to the employee's protected status, solely on the basis of another legitimate reason. *Id.*

In this case, the only evidence plaintiff offers of UPS' military service animus is Thomas Acquaviva's efforts to have plaintiff's active duty orders either postponed or relieved. The record shows that after plaintiff received the orders, he showed the papers to Acquaviva and expressed his unhappiness with the orders since going on active duty entailed reducing his salary by half and required extended periods of time away from home. Plaintiff testified that he would have been pleased if his active duty orders would have been either postponed or altogether eliminated. (Pl.'s Depo., p. 63 lines 8–25; p. 64, line 1; p. 74, lines 9–11). At Acquaviva's suggestion, plaintiff went to see Major T.W. Ward ("Major Ward") of the Marine Corps about the possibility of releasing plaintiff from his active duty orders. After Major Ward indicated that the orders were mandatory, Acquaviva asked two other UPS managers, Leo Montero and John Acino, both former Marines, to contact Major Ward. They met and spoke with Major Ward, who agreed to check into the possibility of relieving plaintiff from the orders. Within a few days after their meeting, Major Ward telephoned Acquaviva to indicate that the orders could not be changed. Acquaviva thanked Major Ward and stated that plaintiff would "be there ready to serve." (Acquaviva Depo., p. 108, lines 8–18). Approximately two weeks later, plaintiff was

---

4. The Court does not reach the defendant's legitimate non-discriminatory reason or plaintiff's proof of pretext since the burden only shifts to the defendant if plaintiff succeeds in establishing a prima facie case. In the absence of establishing a prima facie case, there

is no "presumption that the employer unlawfully discriminated" to require the burden to shift to the employer, and plaintiff's pretext argument is rendered moot. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089.

terminated after the investigation into his report of sexual harassment by Marvel.

Even viewing these facts in a light most favorable to the plaintiff, there is no evidence that plaintiff's military obligations were a motivating factor in UPS' decision to terminate him. At the very most, the record shows that plaintiff was a valued employee who UPS wanted to retain in the company. Acquaviva was not involved in the termination decision and plaintiff has not shown that his military obligations factored into Ed Gill's decision to release him. Aside from the correlation in timing, plaintiff offers nothing but his own speculation to establish a nexus between his military orders and his termination. The record does not even remotely suggest that plaintiff's military orders were the "motivating factor," much less any factor at all, in his termination. Rather, the record shows that plaintiff was fired solely for his violation of the "no-dating" rule through his personal, sexual relationship with Marvel. Accordingly, since plaintiff has failed to present a prima facie case of discrimination based upon his military obligations, summary judgment is granted in favor of defendant on plaintiff's USERRA claim.[6]

### III. CONCLUSION

Having considered the motion and the pertinent part of the record and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED

Defendant's motion for summary judgment is GRANTED. [DE 57]

Final judgment shall be entered by separate order.

---

6. Even if plaintiff had shown that his military obligations were a motivating factor in his termination, defendant has established its affirmative defense by showing that it would have terminated plaintiff solely on the basis of his violation of the "no-dating" rule standing alone. *See Robinson v. Morris Moore Chevrolet–Buick, Inc.*, 974 F.Supp. 571, 576 (E.D.Texas 1997).