John SNOWMAN, Plaintiff,

v.

IMCO RECYCLING, INC., and IMCO Management Partnership, L.P., Defendants.

No. Civ.A. 3:03–CV–0690–L.

United States District Court, N.D. Texas, Dallas Division.

Dec. 6, 2004.

Sonja J. McGill, Sumner, Schick & Hamilton, David K. Watsky, Gillespie, Rozen, Watsky & Motley, Dallas, TX, for Plaintiff.

Jonathan C. Wilson, Haynes & Boone, Barry S. Hersh, Hersh Law Firm, Dallas, TX, Helen Thigpen, Haynes & Boone, Richardson, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Defendants' Motion for Summary Judgment, filed June 7, 2004.

After careful consideration of the motion, response, reply, appendices, objections by Plaintiff and responses thereto by Defendants, and applicable authority, the court **grants** Defendants' Motion for Summary Judgment.

## I. *Procedural and Factual Background*

Plaintiff John Snowman ("Plaintiff" or "Snowman") filed this action on April 4, 2003 against IMCO Recycling, Inc., and later amended his complaint to add IMCO Management Partnership, L.P. as a party (collectively, "Defendants" or "IMCO"). Plaintiff contends that Defendants terminated him in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301, *et seq.*, when he informed Defendants that he might be activated for military service shortly after the terrorist attacks on September 11, 2001. Defendants contend that no violation of USERRA took place, and that the decision to terminate Plaintiff was based on legitimate, nondiscriminatory business reasons, unrelated to his military status. Defendants also contend that Plaintiff was an employee of IMCO Management Partnership and never an employee of IMCO Recycling. Defendants further contend that they are not joint employers and do not constitute a single integrated enterprise.

Defendants have filed a motion for summary judgment. They contend that no genuine issue of material fact exists with respect to Snowman's claim, and that they are therefore entitled to judgment as a matter of law. Snowman, on the other hand, contends that he has set forth facts which preclude the granting of summary judgment in favor of Defendants, and requests the court to deny the summary judgment motion and allow the case to proceed to trial. The court now sets forth the undisputed facts on which it relies to resolve the summary judgment motion. In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

Snowman was hired by IMCO in December 1999. He worked at IMCO's corporate office in Irving, Texas. His direct or immediate supervisor during the time relevant to this lawsuit was William Ed Hoag ("Hoag"), and Hoag worked out of Rockwood, Tennessee. IMCO terminated Snowman's employment on September 14, 2001. At the time of his termination, Snowman held the title of Corporate Logistics Manager—Transportation and Purchasing.

The decision to terminate Snowman was made by Hoag, who was Vice President of Aluminum Operations. According to Hoag, by late August 2001, he had decided to eliminate Snowman's job. Hoag was under constant pressure from upper management to reduce costs. He determined that Snowman's position was not justified for the work that he was performing. Hoag believed that Snowman primarily dealt with transportation, that many of Snowman's duties were performed by other employees at the plant level (as opposed to the corporate office), and that only a few of Snowman's duties would have to be absorbed by other employees when his job was eliminated. Hoag did not believe that Snowman was performing any significant transportation duties at the time he made the decision to eliminate his job.

A conference occurred among Hoag, James Madden ("Madden"), and James Walburg ("Walburg")[1] on August 30, 2001 "to discuss the logistics" of how the termination of Snowman would take place and

---

1. Madden was Director of Corporate Human Resources, and Walburg was Senior Vice President of Finance and Administration. Madden reported to Walburg.

who would inform him of the elimination of his position at IMCO. As Snowman reported to Hoag, and Hoag made the decision to eliminate Snowman's job, all three agreed or believed that Hoag should inform Snowman of the elimination of his position and termination of his employment. Because of Hoag's busy travel schedule, September 14, 2001 was selected as the date Hoag would tell Snowman of the decision. Hoag informed his assistant or secretary, Camille Anderson ("Anderson"), that Snowman's job would be eliminated and his employment terminated; instructed her to inform Snowman that he need not attend a manager's meeting in Knoxville, Tennessee on September 11–12, 2001; and instructed her to inquire whether Snowman would be available to meet with him on September 14, 2001. Anderson carried out Hoag's instructions on August 31, 2001, and the meeting was scheduled for 2:00 p.m., September 14, 2001.

A day or so after Anderson had set up the meeting for September 14, 2001, IMCO's benefit manager prepared a summary of Snowman's insurance costs for Madden to use in preparing a severance agreement for Snowman. On September 5, 2001, Madden prepared or drafted a severance agreement to present to Snowman at the meeting on September 14, 2001.

On September 11, 2001, terrorists hijacked four commercial jet airplanes. Two of the jets crashed into and destroyed the Twin Towers of the World Trade Center in New York City, New York; one crashed into the Pentagon outside Washington, D.C.; and the fourth crashed in a field in Pennsylvania. As a result of the terrorists' attacks, the President of the United States and the Federal Aviation Administration grounded all commercial flights for several days. Since Hoag could not travel by air, he was unable to travel to Dallas to attend the scheduled meeting in Irving. On September 12, 2001, Hoag, Walburg, and Madden agreed to proceed with the meeting and termination of Snowman. Walburg was to "stand in" for Hoag at the meeting with Snowman. This date is also when Snowman called Hoag and informed him that he (Snowman) was in the military reserves, that he might serve "volunteer man" days, and that he might be activated in the near future. Prior to September 12, 2001, Hoag did not know that Snowman was a member of the military reserves.

Walburg and Madden met with Snowman on September 14, 2001, and Snowman was informed by Walburg that his job was eliminated and his employment was terminated, effective immediately. Walburg then left the meeting room, and Madden remained with Snowman to discuss the severance agreement relating to Snowman's termination. Snowman did not sign the separation agreement.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 254–55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant

and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### III. *Defendants' Motion for Summary Judgment*

#### A. Contentions of the Parties

The essence of Snowman's claim is as follows:

> Prior to the terrorist attacks that occurred on September 11, 2001, Snowman served as a Captain in the United States Air Force Reserves. On or about September 12, 2001, Snowman told Hoag [his supervisor] that he would likely be activated for service in the very near future. During the same conversation, Snowman asked Hoag whether it would be alright for him to work outside of the office at his base in Fort Worth. Hoag told Snowman that he would think about Snowman's request and give him a response to his inquiry shortly thereafter. Unfortunately, Defendants' response to Snowman's request was to terminate his employment on or about September 14, 2001.

Plaintiff's First Amended Complaint at 2, 3 ¶ 8. Snowman contends that the termination violates section 4311(a) of the USERRA, which prohibits discrimination in employment because of one's military status or obligation. IMCO denies that any discrimination took place because of Snowman's military status, contends that Snowman was terminated for legitimate, nondiscriminatory business reasons, and contends that it would have terminated Snowman regardless of his membership,

performance, or anticipated performance, of duties in the uniformed services.

## B. Analysis

### 1. The Applicable Standard for a USERRA Claim

■ The USERRA prohibits an employer from denying any benefit of employment to a member of the armed services on the basis of his or her military status or obligation. 38 U.S.C. § 4311. Specifically, the statute provides, in pertinent part: "A person who is a member of ... a uniformed service shall not be denied ... retention in employment ... or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a). Subsection (c) of the statute provides, in pertinent part:

An employer shall be considered to have engaged in actions prohibited under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

38 U.S.C. § 4311(c)(1). The statute is to be liberally construed for the benefit of military reservists and guardsmen. *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980); *Cole v. Swint*, 961 F.2d 58, 59 (5th Cir.1992).[2]

■ The burden-shifting scheme applicable to cases under the National Labor Relations Act applies to claims made under the USERRA. *Gummo v. Village of Depew, New York*, 75 F.3d 98, 106 (2nd Cir.), *cert. denied*, 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996) (citing *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983)); *see also Robinson v. Morris Moore Chevrolet–Buick, Inc.*, 974 F.Supp. 571, 575 (E.D.Tex.1997). With respect to the procedural framework and evidentiary burdens of the parties for claims of discrimination under the USERRA,

[t]he procedures established by precedent require an employee making [such] a claim of discrimination to bear the initial burden of showing by a preponderance of the evidence that the employee's military service was "a substantial or motivating factor" in the adverse employment action. If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason.

*Sheehan v. Department of the Navy*, 240 F.3d 1009, 1013 (Fed.Cir.2001) (footnote and citations omitted); *see also Rogers v. City of San Antonio*, 211 F.Supp.2d 829, 835 (W.D.Tex.2002). Stated another way, there must be "an initial showing by the employee that military status was at least a motivating or substantial factor in the [employer's] action, upon which the [em-

---

2. The court could not find any cases by the Supreme Court or Fifth Circuit that addressed the USERRA, and the parties have cited none. The USERRA, which was passed by Congress in 1994, replaced the Veterans' Reemployment Rights Act ("VRRA"). Accordingly, to the extent applicable, the court relies on cases decided under the VRRA, and also relies on cases from other circuits or districts to resolve the motion for summary judgment. The court also draws, to the extent permissible, from legal precedent and concepts in other types of employment discrimination cases to dispose of the summary judgment motion.

ployer] must prove, by a preponderance of the evidence, that the action would have been taken despite the protected status [of the employee]." *Id.* at 1014. A "motivating factor" means that the employer, in taking the action against the employee, "relied upon, took into account, considered, or conditioned its decision on [the employee's] military-related [status or obligation]." *Rogers*, 211 F.Supp.2d at 836 (quoting *Robinson*, 974 F.Supp. at 576).

### 2. Application of the Law

■ The evidence in this case and its chronology necessarily establish that the decision to eliminate Snowman's job was made two weeks before Snowman informed Hoag that he (Snowman) was a member of the military reserves. Hoag, the decisionmaker, did not know that Snowman was in the military reserves until Snowman so informed him on September 12, 2001. Snowman produces no *competent* summary judgment evidence to dispute or contradict the evidence submitted by Defendants. Plaintiff raises suspicions, speculates, makes improbable inferences, and makes unsubstantiated assertions; however, these are insufficient to defeat a motion for summary judgment. *See Eason*, 73 F.3d at 1325. Since Hoag did not know that Snowman was in the military reserves, Snowman's military-related status or obligation could not have been a motivating or substantial factor in eliminating his job and terminating his employment. Accordingly, Hoag could not have relied upon, took into account, considered, or conditioned his decision on Snowman's military-related status or obligation.

Moreover, even if Hoag knew about Snowman being in the reserves, the evidence conclusively establishes that the decision to eliminate Snowman's job had already been made at the time he had the telephone conversation with Hoag on Sep-

tember 12, 2001. This is extremely important because Snowman contends that what he told Hoag during the telephone conversation regarding "volunteer man" days and possible activation prompted IMCO to take the adverse employment action. As the decision to eliminate Snowman's job and terminate him had already been made, the contents of any conversation are irrelevant and quite beside the point. Thus, even if Hoag knew Snowman was in the military reserves prior to the meeting on September 12, 2001, it is of no moment, because Snowman's claim is based *solely* on what he told Hoag during the telephone conversation and IMCO's subsequent action as a result of what was told to Hoag during the conversation. Plaintiff's lawsuit is not based on any contention that Hoag had knowledge of Snowman's military status prior to September 12, 2001. Even if the conversation between Hoag and Snowman had not occurred, no basis for a lawsuit would even exist.

For the reasons herein stated, IMCO did not in any way base its decision to eliminate Snowman's job and terminate him on his military-related status or obligation. Accordingly, there is no genuine issue of material fact with respect to Plaintiff's USERRA claim, and Defendants are entitled to judgment as a matter of law.

In responding to Defendants' summary judgment motion, Plaintiff lists matters he believes raise genuine issues of material fact. Plaintiff lists matters relating to the lack of written reasons for the need to eliminate Snowman's job; allegedly insufficient or suspicious entries on Madden's DayTimer page; the preparation of the separation agreement on September 5, 2001; the delay in informing Snowman when he was to be terminated; and Snowman's appointment to a "very important purchasing committee," and the initial placement of Snowman on the agenda of a

meeting scheduled in Knoxville, Tennessee. Snowman characterizes the facts surrounding these matters as suspicious or full of inconsistencies.

With respect to these matters, the court will not do a minutely detailed analysis of each. Regarding these matters, Plaintiff assigns more significance to them than warranted, and the court finds Plaintiff's position on each matter unavailing and devoid of competent summary judgment evidence. For illustrative purposes, the court will discuss several to show why they do not create a genuine issue of material fact. For example, the court is aware of no legal requirement that an employer must state in writing, as Snowman intimates, its reasons for a reduction-in-force or the elimination of a position. While putting such reasons in writing may be the preferred way, the court is aware of no such legal requirement, and Snowman has cited no authority for such a requirement.

Another example of Plaintiff overstating the importance of a matter is the meeting scheduled for September 11–12, 2001 in Knoxville, Tennessee. Originally, Snowman was on the agenda to make a presentation at the Knoxville meeting. What Snowman overlooks and does not dispute is that Anderson, Hoag's secretary, informed him on August 31, 2001, that he (Snowman) need not attend the meeting in Knoxville. That Snowman would not attend the meeting is totally consistent with and reinforces Hoag's testimony that he made the decision to eliminate Snowman's position at the end of August 2001. The most compelling, logical, and reasonable inference is that Snowman's attendance at the meeting would serve no business purpose, since the decision to eliminate his position and terminate his employment had been made. Moreover, nothing in the record establishes when the agenda for the meeting was prepared. Meetings are often set and agendas prepared weeks or even months in advance of the actual meetings. There is nothing sacrosanct about placing the name of a person or topic on an agenda, as circumstances change, and presenters or topics are often substituted to accommodate the change in circumstances.

Likewise, the court finds unavailing Plaintiff's argument about the timing regarding notification of his termination. Plaintiff questions why Hoag waited until September 14, 2001 to inform him of his termination. First, the undisputed evidence establishes that the decision to terminate Plaintiff was made at the end of August 2001. Second, the court fails to see why the delay is relevant under the circumstances and how earlier notice would have benefited Plaintiff. That IMCO did not act two weeks or so earlier to inform Snowman of its decision does nothing to advance his claim of discrimination. Had Snowman been informed of his termination at the end of August, two things would have been guaranteed—*a loss of two weeks of pay for Snowman and preclusion of this lawsuit.*

With respect to the entries on the Day-Timer page, the appointment of Snowman to chair a committee, and the preparation of the separation agreement, the court has thoroughly examined Plaintiff's argument regarding each and determines that none raises a genuine issue of material fact regarding Plaintiff's USERRA claim. The court therefore sees no purpose served by further comment on these matters.

To the extent that Snowman believes that his job should not have been eliminated, such belief, standing alone, is insufficient to raise a fact question. Assuming that the decision to eliminate Snowman's position was an unwise and unnecessary business decision, a court, absent proof of discrimination, cannot second-guess a company's decision to eliminate a position or

undergo a reduction-in-force. *See Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 373 (5th Cir.1997); *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir.1997). An employment decision does not have to be correct, and can even be arbitrary or unreasonable. *See Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir.1988).

Snowman certainly has a subjective belief that he was discriminated against in violation of the USERRA, and, in his mind, the belief is well-founded. A subjective belief, however, cannot establish a genuine issue of material fact regarding discrimination. *See Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997); *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir.1997); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).

Having reviewed the record and applicable law, the court is convinced that Snowman's military-related status or obligation was not a motivating or substantial factor in IMCO's decision to eliminate his position and terminate his employment. Plaintiff conceded that "[a]t first glance, Defendants' evidence looks convincing," but that "upon thoughtful analysis of the evidence, there are sufficient inconsistencies in such evidence which create a genuine issue of material fact as to whether Hoag truly decided to terminate Snowman prior to the September 11 terrorist attacks." Plaintiff's Response to Defendants' Motion for Summary Judgment at 8. The court disagrees. Not only is Defendants' evidence convincing at first glance, it remains convincing after judicial analysis and scrutiny, which is why IMCO is entitled to summary judgment.

## C. IMCO's Alternative Argument

IMCO contends that it would have terminated Snowman regardless of his mili-

tary service. As the court has determined that Snowman's military-related status or obligation was not a motivating or substantial factor in IMCO's decision to eliminate his position and terminate his employment, the court determines that it need not address Defendants' argument that it would have made the same decision despite Snowman's military status.

## IV. *Objections*

Snowman filed Plaintiff's Objections to Defendants' Summary Judgment Evidence on July 12, 2004, and filed Plaintiff's Supplemental Objections to Defendants' Summary Judgment Evidence on July 14, 2004. Defendants responded to both sets of objections on July 27, 2004.

With respect to his first set of objections, Snowman objects on the grounds of hearsay to portions of the testimony of Anderson, Hoag, Madden, and Walburg. This testimony relates to conversations these persons had regarding Snowman's termination. Snowman also objects to two pages from Madden's DayTimer.

■ The court agrees with Defendants that the testimony and evidence to which objection is made are offered to the court to establish timing and motivation. With respect to the conversations that took place among these individuals, they are not so much as being offered to prove the truth of the matter asserted, but to show that the conversations took place, and that they took place prior to the time that Snowman told Hoag about his military status on September 12, 2001. The conversations relate directly to the heart of Plaintiff's claim—Hoag's motivation for taking the action he took toward Snowman. Moreover, even if the court were to disregard the information to which objection has been raised, there is more than enough non-hearsay testimony and evidence, as

previously set forth by the court, which establishes that Hoag did not in any way base his decision at all on Snowman's military-related status or obligation.

For the reasons stated, Plaintiff's first set of objections are without merit. Accordingly, the court overrules Plaintiff's Objections to Defendants' Summary Judgment Evidence.

With respect to the second set of objections, Snowman objects to the affidavit of Anderson and requests that it be stricken, because Defendants, in their initial disclosures, did not disclose her as a person likely to have discoverable information. While Anderson's name was not "formally" disclosed, the correspondence and exchange of documents produced in discovery reference Anderson and her role and knowledge relating to the elimination of Snowman's job and his termination. The record establishes that Snowman had sufficient notice of Anderson's role during the exchange of discovery between the parties, and that he could have deposed her. Additionally, Plaintiff has not shown how he has been harmed or prejudiced because of a formal failure to disclose Anderson as a person likely to have discoverable information. *See* Fed.R.Civ.P. 37(c)(1). Moreover, Plaintiff has not sought a continuance under Fed.R.Civ.P. 56(f) or requested the court to reopen or extend discovery to depose Anderson. For these reasons, the court overrules Plaintiff's Supplemental Objection to Defendants' Summary Judgment Evidence.

## V. *Conclusion*

For the reasons stated herein, no genuine issue of material fact exists regarding Plaintiff's USERRA claim. The court therefore grants Defendants' Motion for Summary Judgment and dismisses with prejudice this action. Judgment will issue by separate document as required by Fed.

R.Civ.P. 58, and all allowable and reasonable costs will be taxed against Plaintiff John Snowman.

**It is so ordered.**