Wesley A. MICHAELSON, Plaintiff,

v.

WAITT BROADCASTING, INC. d/b/a KMEG TV, Defendant.

No. C00–4171–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Feb. 6, 2002.

Paul Lundberg, Hellige, Lundberg, Meis, Erickson & Frey, Sioux City, IA, for plaintiff.

Theodore R. Boecker, Sherrets & Boecker, L.L.C., Omaha, NE, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. INTRODUCTION .................................................. 1062
 A. Procedural Background .................................... 1062
 B. Factual Background ...................................... 1062

II. LEGAL ANALYSIS ............................................. 1064
 A. Standards For Summary Judgment ......................... 1064
 1. Requirements of Rule 56 ........................... 1064
 2. The parties' burdens .............................. 1065
 3. Summary judgment in employment discrimination cases ... 1065
 B. Waitt Broadcasting's Arguments ........................ 1066
 1. Voluntary resignation ............................. 1066
 2. Accord and satisfaction ........................... 1067
 3. Merits of discrimination claim .................... 1068
 a. Direct evidence ............................... 1068
 b. McDonnell Douglas analysis .................... 1069

*III.* **CONCLUSION** ............................................................... 1073

## I. INTRODUCTION

### A. Procedural Background

On December 4, 2000, plaintiff Wesley A. Michaelson filed this sex discrimination lawsuit against his former employer, Waitt Broadcasting, Inc. ("Waitt Broadcasting"). Michaelson was employed as the general sales manager at Waitt Broadcasting's KMEG television station in Sioux City, Iowa. Michaelson alleges in his complaint that he was discharged from his employment because of his sex in order to protect the employment of a female employee, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Iowa Civil Rights Act (ICRA), IOWA CODE Ch. 216.

On August 16, 2001, Waitt Broadcasting filed a motion for summary judgment. In its motion, Waitt Broadcasting asserts that Michaelson's voluntary resignation of his position precludes his recovery under Title VII and the ICRA. Waitt Broadcasting also contends that Michaelson's claims are barred under the doctrine of accord and satisfaction. Waitt Broadcasting further asserts that Michaelson cannot establish a *prima facie* case of sex discrimination. Finally, Waitt Broadcasting contends that the record is devoid of facts which would support Michaelson's claim for punitive damages.

Michaelson filed a timely resistance to Waitt Broadcasting's motion on October 15, 2001, in which he disputes all of Waitt Broadcasting's arguments for summary judgment. Before turning to discuss the standards for Waitt Broadcasting's Motion for Summary Judgment, the court will first examine the factual background of this case.

The court heard telephonic oral arguments on defendant Waitt Broadcasting's motion for summary judgment on February 1, 2002. At the oral arguments, plaintiff Michaelson was represented by counsel Paul Lundberg of Hellige, Lundberg, Meis, Erickson & Frey, Sioux City, Iowa. Defendant Waitt Broadcasting was represented by counsel Theodore R. Boecker of Sherrets & Boecker, L.L.C., Omaha, Nebraska.

### B. Factual Background

The following facts are either undisputed or viewed in the light most favorable to plaintiff Michaelson as the nonmoving party. On August 16, 1999, plaintiff Wesley A. Michaelson was hired as the general sales manager by KMEG television station. Robert Dean, KMEG's general manager, interviewed and hired Michaelson. Michaelson's job as KMEG's general sales manager required him to oversee and direct KMEG's sales representatives in selling advertising. He was also expected to increase sales by generating sales from new customers. Michaelson's employment agreement with KMEG was at will and provided no specific term of employment.

Dean told Michaelson when he was recruiting him that Dean had shored up the sales staff by getting long term commitments from two local sales representatives. When Michaelson started at KMEG his sales staff consisted of Don Leiting, Pat Foley, Chip Benning, and Mary Beyerink. Shortly after Michaelson arrived, Foley and Benning left KMEG to go work for a rival Sioux City television station, KCAU. Beyerink later left KMEG after Michaelson told her that she would only be paid on a commission basis.

In October of 1999, Michaelson hired Patricia Miller as a salesperson. In late February of 2000, Michaelson expressed his concerns about Miller's work performance. Miller missed work and was other times tardy due to her son's behavioral problems. Miller's accounts were billing substantially less in 2000 than the same

accounts did in 1999, and she was not meeting sales goals. She also frequently missed mandatory sales meetings. Acrimony developed between Michaelson and Miller over Miller's work performance.

Dean defended Miller to Michaelson and suggested that Miller and Michaelson were simply "not getting along." Michaelson Aff. at ¶ 6. Michaelson told Dean that there was nothing personal about it and that he viewed Miller as having significant performance problems. Michaelson informed Dean that he would continue his efforts to turn Miller's performance around but, if she did not improve, he would fire her once he had adequate sales staffing.

In February of 2000, Miller complained to Dean that the sales staff needed training and additional support staff. She told Dean that the sales staff was suffering from low morale. In May of 2000, Miller again went to Dean and complained about the sales staff not getting the proper training on selling television advertising. She also complained about Michaelson, accusing him of badgering, lying, cheating, and yelling at her. She also accused Michaelson of hammering on her to force her to quit her job at KMEG.

One of Dean's superiors, Dale Oswald, criticized the sales levels at KMEG. Dean told Oswald and Diana Maudlin, Human Resources Director for Waitt Media and Gold Circle Entertainment, that he was unhappy with Michaelson's sales results and performance. Dean told Maudlin that he did not think Michaelson possessed the requisite skills to improve his performance.

On May 18, 2000, a meeting attended by Michaelson, Dean, and Oswald was held. The topic of KMEG's sales was discussed at the meeting. They also discussed Michaelson's problems with Miller. Michaelson told Oswald about Miller's absenteeism, tardiness, chronic billing shortfalls

and her escalating hostility towards Michaelson. Dean again defended Miller. Oswald then asked Dean if Miller was supportive or unsupportive of Michaelson. Dean responded by saying that Miller was unsupportive, but that they had to be extremely cautious with Miller because Dean feared that she would sue if discharged.

On May 23, 2000, Michaelson discussed Miller with Maudlin. Maudlin told Michaelson that she agreed with his view that he had cause to discharge Miller and documentation to support that decision. Michaelson then told Dean that Miller remained uncooperative to his efforts to turn her performance around and that it was his intent to discharge her when he had fully staffed the sales department. Between May 1, 2000, and June 5, 2000, Michaelson completed the hiring of three strong sales candidates. He was then in a position to terminate Miller.

On June 7, 2000, Michaelson expressed his sense of optimism about the new sales staff with Dean. On June 9, 2000, with no warning, Dean informed Michaelson of his decision to fire Michaelson. Dean told him it was because of soft sales. Michaelson responded by telling Dean that he now had a sales staff with professionals who could do the job. Dean, however, said it was too late, the decision to terminate him had been made and that there was nothing that Michaelson could do about it. Dean informed Michaelson that the only question was whether he wished to be fired or tender a letter of resignation. Dean informed Michaelson that the letter of resignation option would permit Michaelson to seek new employment while appearing to be employed. Dean also disclosed that if Michaelson resigned Dean would allow Michaelson some input into the wording of a recommendation for him. Regardless of which option Michaelson chose, Dean said that Michaelson would be paid through

August 15, 2000. Michaelson replied that his first inclination was to tender a letter of resignation because he felt the performance of the newly hired sales personnel would prompt Dean to reconsider his decision. Dean, however, said that he would not reconsider his decision under any circumstances. On June 9, 2000, Michaelson signed a letter of resignation. Michaelson states in his letter of resignation: "I have decided to pursue other career opportunities and thereby offer my resignation as General Sales Manager Of KMEG effective August 15, 2000." Michaelson was paid through August 15, 2000. He subsequently took a job as a salesperson at Gateway. Michaelson's position as KMEG's general sales manager was filled by another male, Thomas Haack.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.*, 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part*, 202 F.3d 1035 (8th Cir.), *cert. denied*, 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd*, 205 F.3d 1347, 2000 WL 84400 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston*, 133 F.3d at 1107; *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial," FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach*, 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### 3. Summary judgment in employment discrimination cases

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not

support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford*); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

 However, not long ago, the Eighth Circuit Court of Appeals also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). More recently, in *Reeves v. Sanderson Plumbing Products,*

*Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[1] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097 (emphasis added).

 The court will apply these standards to Waitt Broadcasting's motion for summary judgment.[2]

### B. Waitt Broadcasting's Arguments

### 1. Voluntary resignation

 Waitt Broadcasting initially asserts that summary judgment should be granted

---

1. In *Reeves*, the Supreme Court was considering a motion for judgment as a matter of law *after* a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.' " *Id.* at ——, 120 S.Ct. at 2110 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

2. Iowa courts look to Title VII, its regulatory interpretations, and its case law in resolving sex discrimination claims and retaliation claims under the ICRA. *See Vivian v. Madison*, 601 N.W.2d 872 (Iowa 1999); *Hulme v. Barrett*, 449 N.W.2d 629, 631 (Iowa 1989); *King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 601 (Iowa 1983). Therefore, while the court's analysis will refer only to Title VII, the analysis also applies to Michaelson's sex discrimination claim under the ICRA.

in its favor because Michaelson voluntarily resigned his position. The court need not tarry long with this argument. The court finds that a material question of fact has been generated as to whether plaintiff Michaelson's resignation was voluntary or involuntary. In his affidavit, Michaelson indicates that Dean informed him that he was to be terminated regardless of whether he resigned or not, but that if he signed a letter of resignation he would be able to present the illusion that he was still employed while looking for new employment. Therefore, this portion of Waitt Broadcasting's motion for summary judgment is denied.

### 2. *Accord and satisfaction*

■■■■■ Closely related to its first argument, Waitt Broadcasting asserts that Michaelson's claims are barred under the doctrine of accord and satisfaction. The Iowa Court of Appeals has explained that:

> An accord is an agreement in which the parties agree to discharge a preexisting contract or obligation by giving and accepting a substituted consideration in settlement of the claim. *Seidler v. Vaughn Oil Co.*, 468 N.W.2d 474, 475 (Iowa App.1991). The satisfaction is the performance or execution of the agreement. *Id.* Both debtor and creditor must intend the substituted consideration is an accord and satisfaction of a preexisting claim. *Id.* at 477. Proof of the required intent may include the agreement itself, the parties' words or actions, and the surrounding circumstances. *Id.* The creditor's intent is established if it is shown she knew or should have known the substituted consideration was intended as an accord and satisfaction. *Id.* Whether intent exists is a fact question and cannot be decided as a matter of law. *Id.*

*In re Estate of Buss*, 577 N.W.2d 860, 861 (Iowa Ct.App.1998); *Davenport Bank & Trust Co. v. State Cent. Bank*, 485 N.W.2d

476, 479 (Iowa 1992) ("We have defined accord and satisfaction as 'a means of discharging a contractual obligation by agreement of the parties to render and accept a different and substituted performance as full satisfaction of the preexisting claim.'") (quoting *Electra Ad Sign Co. v. Cedar Rapids Truck Center*, 316 N.W.2d 876, 879 (Iowa 1982)). Here, at minimum, a genuine issue of material fact exists as to whether Michaelson, by accepting payments from Waitt Broadcasting from the time of his resignation, on June 10, 2000, until August 15, 2000, intended to give up any claims arising under Title VII he might have against Waitt Broadcasting. The record before the court is devoid of materials which would permit the court to determine Michaelson's intent. Michaelson's letter of resignation itself contains no language of his intent. Therefore, on the record before the court, Michaelson's intent cannot be ascertained.

■■■■ The court further finds that a genuine issue of material fact has been generated on the question of whether valid consideration exists upon which to find an accord and satisfaction. "Like a contract, valid consideration must exist for there to be accord and satisfaction." *Davenport Bank & Trust Co.*, 485 N.W.2d at 479; *accord Hubbard Milling Co. v. Citizens State Bank*, 385 N.W.2d 255, 258 (Iowa 1986); *Kellogg v. Iowa State Traveling Men's Ass'n*, 239 Iowa 196, 211, 29 N.W.2d 559, 567 (1947). Michaelson avers in his affidavit that Dean informed him that he would be paid through August 15, 2000, regardless or whether he resigned or forced Dean to terminate him. Thus, his resignation did not result in him being accorded any additional monies from Waitt Broadcasting and would not support a finding of consideration. Therefore, this segment of Waitt Broadcasting's motion for summary judgment is also denied.

### 3. Merits of discrimination claim

Waitt Broadcasting alternatively contends that if the court finds that Michaelson was terminated by KMEG, Michaelson cannot establish a *prima facie* case of sex discrimination under the burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Michaelson asserts that because he has direct evidence of intentional discrimination, the court must instead rely upon the standard set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Alternatively, Michaelson asserts that he can establish a *prima facie* case of sex discrimination under the *McDonnell Douglas* burden-shifting standard.

There are two methods by which a plaintiff can attempt to prove intentional employment discrimination. First, the plaintiff can rely upon the standard set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), if the plaintiff produces direct evidence that an illegitimate criterion, such as gender, "played a motivating part in [the] employment decision." *Id.* at 258, 109 S.Ct. 1775. Once the plaintiff establishes such direct evidence, the burden shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination. *Id.* If the employer fails to meet this standard, the employee prevails. Alternatively, the plaintiff can proceed under the three-stage, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Texas Dep't of Com. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. Once a *prima facie* case is established, a rebuttable presump-tion shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. If the employer articulates such a reason, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination.

### a. Direct evidence

 Here, Michaelson asserts that he has direct evidence that sex was a motivating factor in Waitt Broadcasting's decision to terminate him. He contends that the following events constitute direct evidence of discrimination: Michaelson advised Dean and other senior management that Miller should be discharged because of poor work performance. Michaelson also informed Dean that he would dismiss Miller once he had a competent sales force in place. Then in May of 2000, three weeks before his employment with Waitt Broadcasting ended, Dean told Michaelson that they had to be very careful with Miller because he feared she would sue if fired. Miller previously told a co-employee, Aaron Rochester, that her job was being protected by Dean. On June 5, 2000, Michaelson completed the hiring of what he felt was a competent sales staff and Dean would have been aware of this fact. On June 9, 2000, with no warning, Dean informed Michaelson of his decision to fire Michaelson. The court does not believe that this sequence of events constitutes "direct evidence" of discrimination, as Michaelson contends. Rather, those events do no more than provide circumstantial evidence of discriminatory animus. "Direct evidence is that which demonstrates a specific link between the challenged employment action and the alleged animus." *Kells v. Sinclair Buick–GMC Truck, Inc.,* 210 F.3d 827, 835 (8th Cir.2000). More specifically, direct evidence is "evidence of conduct or statements by persons involved

in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993) (quotation omitted). Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference. For example, " 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself' " will not suffice. *Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991) (quoting *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775). The statement attributed to Dean—to the effect that he was protecting Miller's job—does not "directly reflect" a "discriminatory attitude" because it makes no mention of gender whatsoever. *See Walton v. McDonnell Douglas Corp.,* 167 F.3d 423, 426 (8th Cir.1999) (holding that supervisor's statement that he had "to take care of my kids," did not constitute direct evidence of age discrimination). Therefore, the court will turn to proceed under the *McDonnell Douglas* burden-shifting standard.

### b. *McDonnell Douglas analysis*

■ Under the *McDonnell Douglas* analysis, the plaintiff's usual burden to establish a *prima facie* case of employment discrimination is to show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job he or she was performing; (3) the plaintiff suffered adverse employment action, or was discharged; and (4) a nonmember of the protected class replaced the plaintiff or was not subjected to the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

The United States Supreme Court clarified the burden-shifting analysis required for discrimination claims in *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In *Reeves,* the court explained the burden-shifting analysis as follows:

McDonnell Douglas and subsequent decisions have "established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, the plaintiff must establish a prima facie case of discrimination. *Ibid.; Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).... [Once the prima facie case is established,] [t]he burden ... shift[s] to [the defendant] to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine, supra,* at 254, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. This burden is one of production, not persuasion; it "can involve no credibility assessment." *St. Mary's Honor Center, supra,* at 509, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407. [A defendant meets] this burden by offering admissible evidence sufficient for the trier of fact to conclude that petitioner was fired [for a legitimate reason]. Accordingly, "the McDonnell Douglas framework—with its presumptions and burdens"—disappear[s], *St. Mary's Honor Center, supra,* at 510, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, and the sole remaining issue [i]s "discrimination vel non," [*U.S. Postal Service Bd. of Governors v.] Aikens,* 460 U.S. [711,] 714, 103 S.Ct. 1478, 75 L.Ed.2d 403. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate

burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S., at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207. And in attempting to satisfy this burden, the plaintiff—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Ibid.; see also St. Mary's Honor Center,* supra, at 507–508, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* supra, at 256, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. Moreover, although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, *St. Mary's Honor Center,* supra, at 511, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual," *Burdine,* supra, at 255, n. 10, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

*Reeves,* 530 U.S. at 141, 120 S.Ct. 2097.

■■■ Where, as here, a plaintiff alleges reverse discrimination, the Eighth Circuit Court of Appeals, along with several other federal circuit courts of appeal, has held that this showing is insufficient to meet a *prima facie* case of discrimination. *Duffy v. Wolle,* 123 F.3d 1026, 1036 (8th Cir. 1997), *cert. denied,* 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998); *accord Mills v. Health Care Service Corp.,* 171

F.3d 450, 455–57 (7th Cir.1999); *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985); *Parker v. Baltimore and Ohio Railroad Co.,* 652 F.2d 1012, 1017–18 (D.C.Cir.1981). In a reverse discrimination case, the plaintiff must also show "that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Duffy,* 123 F.3d at 1036. While the Seventh Circuit Court of Appeals has recognized that the contours of a "background circumstance" are imprecise, it suggested that a plaintiff could satisfy this prong by showing (1) "some reason or inclination to discriminate invidiously against whites or men, and evidence indicating that there is something 'fishy' about the facts of the case at hand;" or (2) "the person ultimately hired was clearly less qualified than the plaintiff, the hiring authority expressed intense interest in hiring a woman [or minorities], [or] there was a pattern of hiring women [or minorities] in the past;" or (3) that "[he] was the only white employee in the department and all of the decision makers were [African American]." *Mills,* 171 F.3d at 455–457 (internal quotations omitted). The District of Columbia Circuit Court of Appeals has observed that the evidence it has found to constitute sufficient "background circumstances" can be grouped into two categories: "(1) evidence indicating that the particular employer at issue has some reason or inclination to discriminate invidiously against whites . . . and (2) evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of discrimination." *Harding v. Gray,* 9 F.3d 150, 153 (D.C.Cir.1993). In *Duffy,* the Eighth Circuit Court of Appeals concluded that the plaintiff had met his burden of showing "background circumstances" by showing: "(1) that [the candidate hired] was substantially less qualified than [the plaintiff]; (2) Chief Judge Wolle

had mentioned an interest by someone in the Administrative Office in the recruitment of a female; and (3) that two members of the Panel had usually hired female law clerks." *See Duffy,* 123 F.3d at 1037.

■ Here, one of the *prima facie* factors at issue is whether Michaelson has established that a nonmember of the protected class replaced the plaintiff or was not subjected to the adverse employment action.[3] Waitt Broadcasting asserts that Michaelson is unable to meet this requirement because Michaelson and Miller occupied different sales positions and thus they were not similarly situated. Michaelson contends that both he and Miller were accused of poor sales performance and that "[e]mployees are similarly situated when they are involved in or accused of the same or similar conduct and are disciplined in different ways," citing *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1309 (8th Cir.1994). "The test for whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." *Palesch v. Missouri Comm'n on Human Rights,* 233 F.3d 560, 568 (8th Cir.2000) (citing *Harvey v. Anheuser-Busch, Inc.,* 38 F.3d 968, 972 (8th Cir. 1994)). In *Williams,* the Eighth Circuit Court of Appeals specifically stated that the proper formulation of the test of whether identified employees are "similarly situated" is whether the employees are "similarly situated *in all relevant respects.*" *See Williams,* 14 F.3d at 1309 (emphasis added). Other decisions of the Eighth Circuit Court of Appeals also make clear that the employees identified for comparison must be "similarly situated in all relevant respects," not simply in terms of whether they were accused of the same conduct. *See Lynn v. Deaconess Med.*

*Center–West Campus,* 160 F.3d 484, 487 (8th Cir.1998) (the plaintiff asserting disparate treatment "has the burden of proving that he and the disparately treated [co-employees] were 'similarly situated in all relevant respects'") (quoting *Harvey,* 38 F.3d at 972); *Ward v. Procter & Gamble Paper Products Co.,* 111 F.3d 558, 560 (8th Cir.1997). Indeed, in *Lynn,* a panel of the Eighth Circuit Court of Appeals specifically rejected the contention that the exclusive test of whether employees are similarly situated is whether they are accused of "the same or similar conduct," noting that other facts may also provide the relevant respects in which the parties are "similarly situated." *See Lynn,* 160 F.3d at 488 (rejecting the contention that "employees are similarly situated *only* when they engage in the *same* offense") (emphasis in the original). The court in *Lynn* concluded that "accusation of the same conduct" was not even the proper formulation of the question of factual similarity; rather, the proper question was whether the employees engaged in conduct "of 'comparable seriousness.'" *Id.* at 488 (quoting *Ricks v. Riverwood Int'l Corp.,* 38 F.3d 1016, 1019 (8th Cir.1994), and also citing *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1261 (10th Cir.1988)). The court explained,

> To require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination. Common sense as well as our case law dictate that we reject such an approach.

**3.** At oral argument, the court questioned the parties at length about the applicability of this prong of the *McDonnell Douglas* test to a case involving a claim of reverse discrimination concerning employees occupying different strata in the company. Because the issue was neither raised by the parties nor briefed, the court need not decide it here.

*Lynn,* 160 F.3d at 488. The court concluded that another employee's "sleeping on the job was at least comparable to, if not more serious than, the misconduct alleged against [the plaintiff]," and therefore, "[u]nder the circumstances, we find that [the two employees] were similarly situated." *Id.* Thus, the Eighth Circuit Court of Appeals expressly recognized in *Lynn* that whether employees are "similarly situated in all relevant respects" extends beyond the factual identity or similarity of the conduct of which they are accused.

 Recognizing that the employees under comparison must be "similarly situated in all relevant respects," the court turns to the question of whether Michaelson, as KMEG's general sales manager, was "similarly situated" to that of Miller, a salesperson. Miller was but one cog in the sales force that KMEG employed. While any failure by Miller to meet her sales goals would have an impact on the economic well being of KMEG, she was not the sole person responsible for such efforts. Michaelson, on the other hand, was in charge of the entire sales force. He was the person responsible for developing and implementing viable sales strategies as well as hiring and training a sales staff. The downturn in advertising sales at KMEG from that of his predecessor could reasonably be attributed to some failing on his part. Courts have held that an employer is justified in holding management to a higher standard of performance. *See, e.g. Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1042 (7th Cir.1993); *Gaston v. Home Depot USA, Inc.,* 129 F.Supp.2d 1355, 1371 (S.D.Fla.2001); *Jones v. Winn–Dixie Stores, Inc.,* 75 F.Supp.2d 1357, 1365 (S.D.Fla.1999). Because of their divergent positions in the structure of KMEG's sales department, Miller reported to Michaelson, the general sales manager while Michaelson answered to Dean, the station's general manager. Courts have often found that managers and executives are not similarly situated to proletarian or staff workers. *See O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 984 (7th Cir. 2001) (holding that company president was superior to, and thus not similarly situated to, other managers and professional level staff); *Rodriguez–Centeno v. Pueblo Int'l, Inc.,* 171 F.Supp.2d 43, 48 (D.P.R.2001) (holding that employees in department who were not terminated as part of reduction in force were not similarly situated to 51 year old director of department); *Sanguinetti v. United Parcel Serv.,* 114 F.Supp.2d 1313, 1317 (S.D.Fla.2000) (holding that male supervisor, who was terminated after reporting sexual harassment and his violation of employer's policy prohibiting sexual relations between managers and subordinate employees, was not "similarly situated" to female employees, who reported sexual harassment). Thus, the court concludes that Michaelson, KMEG's general sales manager, was not, as a matter of law, similarly situated to Miller, a salesperson, because they were not similarly situated "in all relevant respects," *see Lynn,* 160 F.3d at 487; *Ghane v. West,* 148 F.3d 979, 982 (8th Cir.1998); *Herr v. Airborne Freight Corp.,* 130 F.3d 359, 362 (8th Cir.1997); *Ward,* 111 F.3d at 560; *Harvey,* 38 F.3d at 972; *Williams,* 14 F.3d at 1309.

The court further finds that Michaelson has not met the additional requirement in a reverse discrimination case to demonstrate "that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority," *Duffy,* 123 F.3d at 1036. Here, Michaelson has not directed the court's attention to any background circumstances which would support the suspicion that Waitt Broadcasting "is that unusual employer who discriminates against the majority." *Id.*

In these circumstances, Waitt Broadcasting is entitled to summary judgment on Michaelson's Title VII claim as a matter of law, because Michaelson cannot establish threshold elements of that claim.[4] *See* FED. R. CIV. P. 56(c) (summary judgment may be granted where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d at 1492 (same). Therefore, Waitt Broadcasting's motion for summary judgment is granted.

### III. CONCLUSION

The court concludes that Waitt Broadcasting is entitled to summary judgment on Michaelson's claims of sexual discrimination under Title VII and the ICRA because Michaelson has been unable to establish a *prima facie* case of sex discrimination. Therefore, Waitt Broadcasting's motion for summary judgment is granted.

**IT IS SO ORDERED.**

---

4. Even assuming that Michaelson could establish a *prima facie* case of reverse sex discrimination, on the record before the court, he has failed to show that Waitt Broadcasting's legitimate, non-discriminatory reason for its adverse employment action against him was pretextual. The fact that a female employee in a subordinate job is perceived as being litigious, without more, does not cast doubt on Waitt Broadcasting's proffered non-discriminatory reason for its employment decision and thus does not generate an inference of discrimination. Similarly, although the circumstances surrounding Waitt Broadcasting's decision to terminate Michaelson's employment could be considered "fishy," the facts are insufficient to give rise to an inference of discrimination.